Morning. Please be seated. Our first case this morning is SANOFI-AVENTIS v. GENENTECH. Dr. Verhoeven. Good morning, Your Honors. May it please the Court. By this appeal, Appellant Genentech seeks direction from this Court ordering Appellee SANOFI and its parent company, which is Shell Company, that owns 85% of SANOFI, to respect the final judgment of this Court, a judgment that SANOFI specifically filed suit to obtain and prosecuted over several years. There can be no dispute here that this Court's final judgment is dispositive of the arbitration proceedings that are now proceeding across the pond. Well, but the arbitrator has interpreted the contract under German law not to depend on a finding of infringement of the U.S. patents. And I'm very sympathetic to the position that it seems to me that your problem is that the arbitrator has rendered a ruling which is not in conflict with our prior decision that goes off on a different ground. It may be a misinterpretation of the contract, but what can we do about that? Well, what we're seeking and what we're trying to focus on here is a bedrock U.S. policy of res judicata. Yeah, but address the problem. The arbitrator says it's not the same issue. It doesn't depend on the same question that was resolved in our prior cases. Well, if you look at Section 1.6 of the License Agreement, Your Honor, it says, and 1.6 really governs, if you look through the structure of the License Agreement, there's no liability for royalties. This is not disputed. And last, there's a licensed product. So what are we supposed to do to tell the arbitrator that he's misinterpreted the contract? Well, Your Honor, if you look at that section that defines liability license agreement, licensed product, that would fit that definition, Your Honor, if, quote, in the absence of this agreement, there be infringement. And if you read through the License Agreement... I agree with you. If I were the arbitrator in the ICC proceeding, I'd agree with your argument, but the problem is he didn't. Well, he says that's not the right interpretation of this contract. I mean, what am I supposed to do about that? Well, first of all, what we're seeking to do is enjoin a party, not the arbitrator, and the party has, if you look at the course of conduct, it was undisputed throughout the proceedings until we obtained summary judgment and non-infringement. Sanofi itself represented both here and in the arbitration proceedings that U.S. law governs, and they're bound by that. But Mr. Verhoeven, the parties, both parties, chose German law, chose an arbitrator in Germany. Aren't we frustrating their choice if we step in and say, oh, now we're going to take this case away after you made the choice to go to Germany and choose a German arbitrator? Not at all. In fact, I really think that's a red herring, if I could give an example. It's not a red herring, but tell me what it is. Give an example, Your Honor. You might say why it doesn't frustrate that policy. If I could give one example. Sure. This really isn't about not respecting form selection clauses or arbitration clauses. This is about respecting the principle of res judicata. And so my example, say we have the same facts, but the form selection clause says this license agreement must be brought in the Southern District of New York. And same facts, there's a parallel, there's a termination, there's a parallel California proceeding, goes to judgment first. Okay? Then we file a motion in New York saying you are bound by this and you can't argue further that there's not infringement. But you didn't choose New York. You chose Germany. My only point, Your Honor, is that by making that motion, we're not disrespecting the form selection clause. And same thing if it was an arbitration, a AAA arbitration in the United States. But we'd have to tell the German arbitrator through an injunction directed to the party that his interpretation of his contract under German law is wrong, because you don't get to the res judicata or collateral estoppel issue until you conclude that his interpretation of the contract is wrong, right? Well, the arbitrator in paragraph 213 of one of his rulings said, of course, the issue of whether it's infringement of U.S. patents is a question of U.S. law. And so if you look at section 106, Your Honors, it says, if there be infringement, absent the agreement. So essentially, what the arbitrator is saying, if he's saying this, is I don't have an agreement. I've got two U.S. patents, and I'm going to apply German law to two U.S. patents, which is in total contravention of U.S. law itself. I mean, it goes even further than disrespecting res judicata. But we're not talking here about anything other than applying the doctrine of res judicata. And here we have a situation where the only way for us to do that is through an anti-suit injunction procedure. But as Judge Dyke just pointed out, res judicata depends upon the same issues. We have a different issue. We also might have an issue about parties, wouldn't we, being the same? You want to enjoin Sanofi and those acting in concert with it. Who are we talking about? Well, we're talking about the parent company, Hearst, which is a shell company. It owns 85% of Sanofi. These are undisputed facts. In both proceedings, the same counsel was representing the parties. So under those undisputed facts... Judge Hilston found that the parties weren't the same. Well, it's interesting. If you look at the... We don't have a written order. We have a transcript. And if you look at the transcript, we've got maybe two sentences on that issue, which I would submit is simply a bare conclusion of law. And the underlying facts to that conclusion of law are undisputed. And if you look at the case law, Your Honor, and ask the question, is there a substantial similarity, what Judge Hilston said was they weren't the same. Well, we respect the standards, even though sometimes the courts say the same party. When the issue is whether it's the same party, the courts look at the same issues that we have, whether there's control, whether there's ownership, whether there's adequate representation. And here it can be argued that there wasn't control, that there wasn't adequate representation. In fact, if you look at the factual record, you'll see that once Hearst and Sanofi knew that there was going to be a dispute about this, they started assigning the rights after the termination notice went out. And then when there was a motion in the arbitration saying that Hearst wasn't the appropriate party, they did another assignment. So they're clearly coordinating with each other, and they're clearly adequately represented under the case law in the United States, whether there's sufficient privity or the anti-dispute injunction case law that we cited in court. Now, so let's go back a little bit to the res judicata argument. I looked at your arguments. It seems to me that you should be making these arguments before the foreign arbitrator, not us. And if we're looking at res judicata and assuming that it applies, isn't it the case that it's German law that would interpret the elements of res judicata that would apply here, not U.S. law? No, Your Honor. This is a simple, at least the way I look at it, a very simple issue. Sanofi and Hearst, together, were coordinating this dispute. Sanofi chose to file a suit in the United States and prosecuted it, seeking a determination of whether there's infringement under these two patents. They got what they asked for. If they didn't like it, then in this parallel proceeding, are moving and disrespecting this court's ruling. They're disrespecting this court's ruling. And this is not about the arbitrator. This is about a person that comes to the United States, seeks a final ruling from the United States courts, burdens the U.S. court system, gets that final ruling. But you got the same judge on the injunction that you had on the original ruling. This is the judge who would be disrespected, and she sees things in a different light, right? Well, Judge Hylston, again, looking at the transcript, there's a paragraph of her ruling and simply said, for example, that it would frustrate the form selection clause arbitration or policy to enforce those, for example, as well as the party point. And again, this is not about disrespecting the arbitration clause. We're still participating in the arbitration. It's about whether it would frustrate U.S. policy or U.S. interests. And isn't it U.S. policy that we encourage arbitration and we encourage non-suit type proceedings? Absolutely. The distinction, Your Honor, is there's a lot of case law out there denying motions to stay arbitrations and whatnot. The distinction is those don't involve a final judgment that the party seeking arbitration sought and obtained before there's a final judgment in the arbitration. And if you look at the cases we cited, there are cases where the courts have enjoined the further proceedings in the arbitration once that party got their final judgment. And that's simply what we're asking here. Does it matter that the arbitration is considering the damages issue right now? And is there an issue of finality here? No, that's not an issue. There hasn't been a damages ruling yet, Your Honor. And our motion specifically sought to enjoin further enforcement as well. And clearly, there's not a final arbitration ruling. So what we've got is, to sum up, what we've got is Sanofi and Hertz together asked the plan how they're going to prosecute this. They chose deliberately to prosecute in parallel in two forums. And they got a ruling in the U.S. forum, a final judgment of non-infringement. That is, without question, and by the way, Your Honor, I'm talking about Judge Ilson. Judge Ilson agreed. That is dispositive. What is your judicial remedy for review of the arbitration of work once it becomes final? Is there a provision for judicial review of any kind? You can seek an appeal. It's called a vacature. Where would that be done? In Paris. In Paris? Yes. And the statistics on that are, I think, 10%, less than 10% of those types of motions. Was one of the grounds for vacating the award that the arbitrator heard in construing the contract? I do not believe so. I think, and I'm not a European lawyer, but I think that it's quite restricted, Your Honor, as to what you're allowed to appeal on. In fact, just give me a second. I think that the, here we go, you can argue that the arbitral tribunal rules without complying with the mandate conferred upon it. You can make a general due process argument. You can argue that the recognition or enforcement of the award would be contrary to international public policy. You can make a jurisdictional argument, and you can argue that it was not properly, that the arbitration tribunal was not properly constituted, but there's no merits review. So, this is why we're seeking this motion, Your Honor, is they wanted it, they asked the court for it, they got a ruling, and we're simply asking not to disrespect that ruling and argue the opposite in another jurisdiction. I just want to save your subtle time there. Thank you. Mr. Solang? Wasn't the damages hearing supposed to be in November? We did have a damages hearing in November. Can you tell us what happened? The arbitrator reserved judgment. We expect to have a ruling on the issue of damages. I believe it's before the end of February is the next deadline set by the ICC in this proceeding. So, we had a hearing with witnesses just after Thanksgiving. Why did they preserve a ruling on that? Just because he doesn't rule from the bench, he's going to write an opinion just as he's done before, Your Honor. Your Honor, there are two clients originally in the arbitration proceeding who agreed, did they not, that the question of whether this was a licensed product for which licensing fees had to be paid depended on whether there was infringement of the U.S. patent under U.S. law. Your Honor, I don't believe that's a full and fair characterization of the record. Herbst always asserted that as a matter of German law, this was not a patent infringement case. It was determined totally on contractual rights. And if you look at the second award, which is part of the record here on appeal, by the arbitrator, he characterized our position as such in that award. I know that you changed your position at one point, but I thought earlier in the arbitration, at one point in the arbitration, and the quotes are in the brief, that you had agreed that this depended on U.S. law and depended upon the finding that the U.S. patent would be infringed. Your Honor, I don't believe there was ever an agreement not to argue the German case. I believe the alternative arguments were always pressed. Clearly, if the arbitrator had decided that it was an issue of U.S. law that determined whether or not the contract had been violated, then the way the U.S. courts determined that infringement would apply. would be the two-step analysis of claim construction, initially followed by application of the construction to the claims. But from the very beginning, the arbitrator understood our position to be that this was not a patent infringement case. But because we did not know how the arbitrator was going to decide that issue, and in fact, we didn't know it until September of last year, when he finally decided that it was a question of German contractual law and not U.S. patent law, we argued the U.S. patent case to him. Well, I don't want to take up your time by asking you to show me where this German law argument was made early in the case. I didn't see it. I thought early in the case, it was clear that you were arguing that this depended on U.S. law and the finding that the U.S. patent was infringed and that you changed your mind. I mean, maybe you can change your mind. I thought it was pretty clear early in the arbitration that you, the parties, agreed that this depended on U.S. law and U.S. infringement findings. If that was the case, Your Honor, I believe, then, clearly the mind was changed very early on in this proceeding, certainly before the very first award was ever given on the merits of the case where the arbitrator decided that validity was not an issue in the case. So, at least by that second award, it was clear that we were arguing both that the German contractual law applied, and if not, then U.S. substantive law and patent infringement would apply, certainly by the second award, which was prior to this Court's decision on the merits in this case. And certainly by the final award, Your Honor is correct, we were arguing very clearly, we stated to him, that under German contractual law, U.S. law does not apply, and that's what he agreed to. So, there's no... The central question here is whether or not the arbitrator's decision is in conflict with the U.S. Court's, and it is not. The arbitrator's decision was solely on the grounds of German contractual law, whether or not, as he interpreted the record, the negotiations, and the contract as to whether or not infringing that contract meant use, which is basically how he interpreted it, or meant U.S. patent infringement. And so, there are two... What role does comedy have to play here? Well, Your Honor, I think it's... That encourages jurisdictions to respect each other's judgments, and there seems to be some element of disrespect of what's happened in the Northern District of California. I would disagree with that characterization. He fully understood the U.S. Court's decision. He was cognizant of it, it was argued to him at length. He said, I am purposely not deciding any issue of U.S. patent law, and he respected this Court's decision that they did not infringe. He understood that, and he said that in paragraph 166 of his opinion, that clearly the U.S. Courts have found that they don't infringe. But that is not relevant under German contractual law, because the term infringe does not mean infringe under U.S. patent law. That's what he's found. And the issue of comedy... Is it use, use, regardless of whether it's a patent use or a contractual use? It's use... How he interpreted it, as I can best discern from his opinion. He said that, in essence, the parties in 1990, before any patents had issued, came to an agreement to buy peace. And that agreement was, they were allowed to use the enhancer technology as long as they paid a nominal royalty to Herbst. And they could abrogate that contract at any time, terminate it at any time. If they felt at some point that patents had issued that were invalid, patents had issued that were not infringed, they had the right to terminate it upon issuance of the patents. And that would have left us with a patent lawsuit, and that would have presumably wound up the same way that this patent lawsuit had. So they always had an out to get out of this agreement if they felt that they were unfairly treated. But what the judge said is that, in exchange for peace, in other words, we couldn't sue them for patent infringement, they agreed to pay a nominal royalty for use of the enhancer during the period. Let me ask you a question as to the identity of the parties. And this is going back to the case of Stein v. Heaton, Heaton Control. Herbst is a parent company for Sanofi and owns a significant amount of it. And I don't know if the number is confidential or not, but it's 85%. So if they're both German entities and one owns 85% of the other, how can they be not identical parties for purposes of a legal proceeding? Well, for example, Sanofi Deutschland owned the patents and was the only party that had standing to sue in the district court in San Francisco. Herbst had rights under the contract and was the only party that was entitled to assert those rights substantively in the arbitration. And indeed, Sanofi Deutschland and Herbst were originally part of the arbitration proceedings, and because of a motion from Genentech that Sanofi Deutschland had no cognizable rights under the agreement, the arbitrator decided that they would not be a party for purposes of the merits of the agreement. So with respect to the rights that are at issue here, the rights under the patents and the rights under the agreement, they are separate parties without standing to assert each other's rights. And you argued against that motion, or Sanofi argued against the motion to separate it from the arbitration proceedings. I assumed it was argued against. I wasn't part of the proceedings at the time. I don't know exactly if it was conceded or argued against. Everything in this case has been argued against, so I assume that one was as well. Suppose hypothetically that the parties were the same and that the arbitrator had determined that the outcome of the contractual dispute depended on whether it was infringement of the U.S. patent and had said, I simply disagree with the result reached by the U.S. courts. Where would that leave us? Would you lose then? I don't know whether we would lose. I'd have to look at the other factors involved. But there you would have, under the Gallo decision, you'd have the same parties and the same issue, which is dispositive and capable of being decided entirely by the U.S. district courts. I would think that we would probably, in this court, lose and might have lost before Judge Ilsen as well. I mean, what Judge Ilsen said was, you have to go make this argument for principles of comedy. You have to go make this argument first to the arbitrator. And they did. They made the argument that the court of appeals decision and the district court decision applied. And the arbitrator said, under general law, that's not a relevant inquiry for me to make. And so under principles of comedy, to come back to Your Honor's question earlier, I think that that decision in and of itself deserves respect. I mean, there are two clauses at issue. It's not just the forum selection clause, which says that the arbitrator is to determine, quote, any dispute under the contract here. It's also the choice of law clause, which is the parties agreed that German law would apply to this. So the arbitrator, what Genentech is asking at bottom, is that you disagree with the arbitrator's interpretation of the German law question of what this contract means. And if you disagree, then we might be in the realm of, well, he did the wrong thing. But that, frankly, you don't have the record to decide the question of German law here. And that question, under the forum selection clause, is undoubtedly reserved to the arbitrator. I'm glad you asked that. They have filed a suit in Paris to set aside this arbitration. That happened just before Christmas. Genentech has filed. So they are seeking judicial review. In a letter last week to the arbitrator, which is not part of the record, they characterized that proceeding. And one of the grounds that they put forth is that the arbitrator did not follow this court's decision, as he was mandated to do by his terms of reference. So there is an avenue for Genentech to argue that the arbitrator got it wrong. They have taken that avenue as of a month ago. And again, comedy should allow that process in the Court of Appeals in Paris to play out. If Your Honors have no further questions. Thank you, Mr. Schillander. Mr. Holman, you have a minute and a half. Thank you, Your Honors. What this comes down to, in my view, Your Honors, is who decides whether or not, if there's a final judgment, this first prong is met that is dispositive of this other action. And if we just allow a foreign tribunal, if we look to the foreign tribunals to answer that question and defer that without any analysis, then you'll never get an anti-suit injunction. An injunction in a foreign tribunal can simply make up a... They can say anything. They can say, well, German law applies, well, some other... This is in conflict with U.S. law because of some other things. It's this Court's responsibility, I submit, to take an independent look at that question. Is this Court's final ruling dispositive? And if you take a look at this license agreement, which the arbitrator never even considered Section 1.6, Your Honors, if you look at Section 1.6, sure, there's a German law... Mr. Solander suggests that there's a good deal more at play here than just an analysis of the patents and the use and the contracts. He suggests that the parties made some business agreements that should also be honored, that there was a small royalty that served the interests or beyond of both parties. Is there more at play than just what you're suggesting? Absolutely not. It's a simple license agreement. You can read it. It's written in English. But license agreements have usually a business component as well as a legal component. Well, the license agreement provides a license for research purposes and also provides provisions for running royalty for commercial sale. And what Genentech did was it used it for research purposes and paid throughout the life of the license agreement. And Genentech actually produced the product that is being accused here for years and years and years without any complaint by Sanofi. And in fact, it wasn't until some corporate acquisitions that it happened that we suddenly got told, well, this violates our patents and therefore you owe money to the royalties. They put that at issue in this court, whether or not it violates those patents. The court finally ruled no, it doesn't. And we're simply by this motion asking this court to take a look to see if that ruling is dispositive under the license agreement. We believe it is. And it's this court's responsibility, I submit, to make that decision. We can't defer that decision of whether we should respect U.S. policy to a foreign court. And if you take a look at that and you take a look at the license agreement, as Judge Ilson agreed, it is dispositive. And that's the end of the matter. How are the damages being calculated? What are the parties' positions on the damages and the damages phase of the arbitration? There's disputes amongst the parties as to the interest rate to be applied. But how is it computed? Is it like infringement? The contract itself sets out a royalty rate. I think it's 0.5%. So essentially they're trying to recover the royalty rate under the contract. For past staff, yes, going backwards, Your Honor. And there's some disputes about how to do that. And that's still proceeding, Your Honor. And then, of course, there's going to be an appeal. There's going to be enforcement actions. And so this is not over. And we're seeking ñ all we're doing in this motion is we've got this final judgment. It's not disputed. If this court looks at this itself and asks the question, is it dispositive of the arbitration, rather than just deferring and saying, this foreign arbitrator said it was ñ who didn't even look at 1-6, which says in the absence of the agreement there'd be infringement. If you don't independently look at that and you just say, well, he said German law, so we're not going to look any further, then you're never going to get an antecedent. Suppose we do issue ñ we do enjoin the foreign arbitration. I mean, and we're sitting here and we're listening to arguments about comedy and U.S. interests and U.S. policies. What's to stop a German court, a German arbitrator, to say, well, I don't need to pay attention to that. There's no comedy issue here. There's no German interest at play. Well, again, we're not ñ why should they listen to us in this situation? We're not trying to tell this arbitrator what to do. That's not the motion we're making, Your Honor. We're simply asking that the parties who came here and saw the final judgment be directed to respect that. So this is ñ we're requesting relief, conjunctive relief, as to the parties, Your Honor, that they ñ the parties who said here and in the arbitration, until they lost consistently, and we've got it in our papers and repeated, that U.S. law applies to this question under Section 1.6. And only after they lost, they turned around and in a foreign tribunal said that this court's ruling was wrong, egregiously wrong, and the court should disrespect it. And the arbitrator ñ Well, thank you, Your Honor. I think we have the arguments. Our next case will be Kohlreich vs.